UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL HILLER,            ) | CASE NO. 5:20-cv-2244 |
| ) | |
| ) | |
| PLAINTIFF,            ) | JUDGE SARA LIOI |
| ) | |
| vs.                             ) | |
| ) | MEMORANDUM OPINION AND |
| ) | ORDER |
| AVER INFORMATION, INC. et al.,  ) | |
| ) | |
| ) | |
| DEFENDANTS.          ) | |

Now before the Court is defendants' motion to dismiss. (Doc. No. 9 (Motion); Doc. No. 9-1 (Memorandum in Support).) By this motion, defendants seek: (1) the dismissal of plaintiff's state law claim for wrongful discharge in violation of public policy for failure to state a claim, (2) the dismissal of plaintiff's request for non-economic and punitive damages, and (3) the dismissal of the individually named defendants for lack of personal jurisdiction. Plaintiff opposes the motion (Doc. No. 12), and defendants have filed a reply. (Doc. No. 13.) For the reasons that follow, the motion is granted.

**I.     BACKGROUND**

Defendant Aver Information, Inc. ("Aver") is a California company that "markets and sells audio visual equipment, primarily for use in professional and education settings." (Doc. No. 1 (Complaint) ¶¶ 1, 13.) Plaintiff Michael Hiller ("Hiller"), an Ohio resident, worked for Aver from 2009 until 2016. (*Id.* ¶¶ 1, 14.) In Spring 2019, Hiller became aware of an opening for a regional

sales manager at Aver. (*Id.* ¶ 14.) He contacted Aver's President, Arthur Pait, to inquire about the position. Pait referred Hiller to Russell Barefield, Aver's then-Director of Sales for K-12, who eventually re-hired Hiller. (*Id.* ¶ 15.) Hiller was assigned the title of Channel Account Manager, Higher Education, and was responsible for selling Aver's products designed for school children in grades K-12 (kindergarten through twelfth grade). (*Id.* ¶ 16.) Hiller alleges that, unbeknownst to him, Pait "viewed [Hiller] as a stop gap who could fill a sales position and bring stability to the role until Aver located a younger candidate." (*Id.* ¶ 15.)

According to the complaint, Hiller reported directly to defendant Mike Montemayor ("Montemayor"), Aver's National Sales Director and a resident of Texas. (*Id.* ¶ 4.) Defendant Ted Pepping ("Pepping"), a resident of California, was the "Head of Sales and Marketing" for the K-12 and Pro-AV divisions, and had "indirect supervisory authority over [Hiller.]" (*Id.* ¶ 5.) Defendant Jennifer Lopez ("Lopez"), also a resident of California, served as Human Resources Manager for Aver. (*Id.* ¶ 6, collectively Montemayor, Pepping, and Lopez are referred to as "Individual Defendants".)

During this second stint with Aver, Hiller submits that his performance "steadily improved as he learned the territory and established relationships with Aver's clients." (*Id.* ¶ 1; *see also id.* ¶¶ 23–25.) The company continued to add states to Hiller's sales territory, and, by October 2019, Hiller's territory covered 21 states, including Ohio, Michigan, and Illinois. (*Id.* ¶¶ 17, 20–22.) Notwithstanding Hiller's positive performance, Montemayor and Pait "repeatedly inquired of [Hiller] as to" his plans for retirement. (*Id.* ¶ 26.)

In March 2020, Individual Defendants advised Hiller that his employment with Aver was being terminated. Hiller claims that he was not provided a "substantive explanation" for his

termination. (*Id*. ¶ 27.) He was replaced by Brett Gorski, "a substantially younger individual" who had been previously terminated from Aver for misuse of a corporate credit card. (*Id*. ¶ 28.) The hiring of Gorski was consistent with Pait's "directive" that Hiller be replaced with a younger person, as well as Pait's desire to hire younger individuals. (*Id*. ¶¶ 29–30.) Pait had repeatedly expressed this desire in emails he sent to Aver's management (including Individual Defendants), comments he made to "senior management" about bringing in a "younger breed" of employees, and inquiries he made regarding the age of the candidates Aver was considering for positions within the company. (*Id*. ¶¶ 31–33.)

On October 5, 2020, Hiller filed the present action against Aver and Individual Defendants.[1] In Count One of his complaint, Hiller raises a claim of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. (Doc. No. 1 at 7–8[2].)[3] Count Two purports to set forth a state law claim for wrongful discharge in violation of Ohio's public policy against age discrimination. (*Id*. at 9–10.)

In their motion to dismiss, defendants posit that "Ohio state law does not recognize a wrongful discharge in violation of public policy tort based on alleged age discrimination." (Doc. No. 9 at 1.) They further argue that "non-economic and punitive damages are not available remedies under the ADEA." (*Id*. at 2.) Finally, they contend that Individual Defendants lack sufficient contacts with Ohio to have "purposefully availed themselves of the benefits and protections of Ohio law." (*Id*.) Defendants request dismissal of Count Two and the prayer for non-

---

[1] Hiller did not bring suit against Pait.

[2] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

[3] Hiller turned 60 years of age in January 2020. (Doc. No. 1 ¶ 2.)

economic and punitive damages under Rule 12(b)(6) of the Federal Rules of Civil Procedure. They also seek dismissal of the Individual Defendants under Rule 12(b)(2).

## II. DEFENDANTS' RULE 12(B)(6) MOTION

### A. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading. *Davis H. Elliot Co., Inc. v. Caribbean Util. Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir. 1975). All allegations of fact by the non-moving party are accepted as true and construed in the light most favorable to that party. *See Grindstaff*, 133 F.3d 416, 421 (6th Cir. 1998) (citing *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990)). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Nor is the Court required to accept as true complaint allegations that are contradicted by public records and other evidentiary materials of which the Court may take judicial notice. *See Moody v. CitiMortgage, Inc.*, 32 F. Supp. 3d 869, 874–75 (W.D. Mich. 2014) ("court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint[]") (internal quotation marks and citation omitted); *see also Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) ("if a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document[]") (internal quotation marks and citation omitted).

The sufficiency of the pleading is tested against the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although this standard is liberal, "[t]o

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

### B. Wrongful Discharge in Violation of Public Policy

In Count Two, Hiller avers that defendants' actions in allegedly discriminating against him on the basis of his age "implicate several well-recognized public policies in the State of Ohio, including, but not limited to, the public policy reflected in Ohio's anti-discrimination statute, [Ohio Rev. Code] 4112.01 *et seq*." (Doc. No. 1 ¶ 47, citing *Collins v. Rizkana*, 652 N.E.2d 653 (Ohio 1995).) In support of this claim, Hiller cites to his termination, the transferring of his responsibilities to a substantially younger individual, and the different treatment he contends he received on account of his age. (*Id*. ¶ 48.)

Under Ohio law, a claim of wrongful termination in violation of public policy requires a plaintiff to show that:

> (1) a "clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law"; (2) in general, "dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy"; (3) the "plaintiff's dismissal was motivated by conducted related to the public policy"; and (4) the employer did not have a justifiable "legitimate business justification for the dismissal."

*Carrasco v. NOAMTC Inc.*, 124 F. App'x 297, 304 (6th Cir. 2004) (quoting *Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 529–30 (Ohio 2002)). With regard to the second element—the "jeopardy" element—a plaintiff must also show that "there is no other remedy available." *Day v. Nat'l Elec. Contractors Ass'n*, 82 F. Supp. 3d 704, 708 (S.D. Ohio 2014).

In *Leininger v. Pioneer Nat'l Latex*, 875 N.E.2d 36 (Ohio 2007), the Ohio Supreme Court evaluated the age-discrimination statutory remedies available under Ohio law and explicitly rejected a cause of action for wrongful discharge when it is based upon age discrimination. In so ruling, it concluded that "the jeopardy element necessary to support a common-law claim is not satisfied, because [Ohio Rev. Code] Chapter 4112 adequately protects the state's policy against age discrimination in employment through the remedies it offers . . . . We therefore hold that a common-law tort claim for wrongful discharge based on Ohio's public policy against age discrimination does not exist, because the remedies in [Ohio Rev. Code] Chapter 4112 provide complete relief for a statutory claim for age discrimination." *Id*. at 44.

Relying on similar logic, defendants argue that Hiller's wrongful discharge claim is barred because the ADEA provides an adequate remedy for any alleged age discrimination. (Doc. No. 9-1 at 5.) In support, defendants cite cases like *Cason v. Int'l Truck & Engine Corp.*, 492 F. Supp. 2d 802 (S.D. Ohio 2005), where a plaintiff claimed wrongful termination under ADEA and Ohio public policy and the court granted summary judgment for the employer on the public policy claim. In so ruling, the court found that "the remedies provided by state and federal anti-discrimination statutes, herein [Ohio Revised Code] Chapter 4112 and the ADEA, adequately protect the public policy embodied by those statutes, so that the public policy will not be jeopardized by [] the absence of a common law claim for wrongful discharge in violation of that policy." *Id*. at 815; *see*

6

*v. Cleveland Clinic Found*., 222 F. Supp. 3d 569, 574–75 (N.D. Ohio 2016) (relying on *Leininger* and finding that plaintiff could not asset public policy claims premised on race, age, and medical leave discrimination because adequate statutory remedies exist under federal and state law).

Hiller insists that these cases are distinguishable. He notes that, unlike the plaintiff in *Leininger*, he does not have a remedy under Ohio Rev. Code Chapter 4112. Because Aver does not employ four or more employees within the State of Ohio, Aver does not meet the statutory definition of an "employer" under the statute, and, as such, Hiller contends that Chapter 4112 is not available to remedy the age discrimination he has alleged in his complaint. (Doc. No. 12 at 6, citing Ohio Rev. Code § 4112.01(A)(2) (defining "employer" as "the state, any political subdivision of the state, *or a person employing four or more persons within the state*, and any agent of the state, subdivision, or person") (emphasis added).) And while Hiller does not deny that the ADEA also provides remedies for employees aggrieved by age discrimination, he argues that this Court may not consider these potential remedies because the complaint only identifies Ohio Rev. Code Chapter 4112 as the source for the public policy against age discrimination. (Doc. No. 12 at 6–8.)

Hiller relies upon the unreported decision in *Jenkins v. Central Transport, Inc*., No. 09-cv-525, (N.D. Ohio Jan. 29, 2010). There, defendant employers argued that the plaintiff could not assert a viable public policy claim under Ohio Rev. Code §§ 4101.11 and 4101.12 based on workplace safety because a federal statute—i.e. a statute other than the one identified by plaintiff in support of his state law public policy claim—provided the plaintiff with an adequate remedy. The court in *Jenkins* rejected this argument, finding that "under Ohio law, a court may not *look* to altogether separate statutes as possible alternative remedies." *Id*. at *8 (emphasis in original).

7

Yet, the decision in *Jenkins*, which was issued in the context of a motion to remand following an alleged fraudulent joinder, is not so easily reconciled with the Sixth Circuit's decision in *Carrasco*, where the Sixth Circuit interpreted Ohio law as barring a public policy claim for wrongful discharge if there is *any* other recourse or remedy available. In so holding, the court in *Carrasco* noted that the Ohio Supreme Court has held:

> An analysis of the jeopardy element necessarily involves inquiring into the existence of *any* alternative means of promoting the particular public policy to be vindicated by a common-law wrongful discharge claim . . . . Where, as here, the sole source of the public policy opposing the discharge is a statute that provides the substantive right and remedies for its breach, 'the issue of adequacy of remedies' becomes a particularly important component of the jeopardy analysis . . . . Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests.

*Carrasco*, 124 F. App'x at 304 (quoting *Wiles*, 773 N.E.2d at 531) (emphasis added). Courts have found that, "[i]n essence, then, *Carrasco* requires the Court to examine the adequacy of remedies available under other statutes, not just the adequacy of remedies available under the specific statute that plaintiff elected to proceed under." *Curry v. Consol. Coal Co.*, No. C203-cv-1053, 2005 WL 1159410, at *4 (S.D. Ohio May 17, 2005); *see Rusnak v. Dollar Gen. Corp.*, 1:04-cv-313, 2006 WL 2709765, at *9 (S.D. Ohio Sept. 20, 2006) ("Furthermore, it is clear from *Carrasco* that a public policy claim is barred if there are adequate remedies for the plaintiff under other statutes, not just the statute under which the plaintiff elected to proceed."); *see, e.g., DeMell v. Cleveland Clinic Found.*, No. 88505, 2007 WL 1705094, at *2–5 (Ohio Ct. App. June 14, 2007) (court could look to the Fair Labors Standards Act for public policy, despite the fact that plaintiff confined her wrongful discharge claim to state law as the source for public policy, to determine if plaintiff had an adequate statutory remedy).

A determination that the Court may look to any relevant statute, and not just the statute

### C. Non-Economic and Punitive Damages

Defendants also seek dismissal of Hiller's prayer for non-economic and punitive damages, arguing that these types of damages are not available under the ADEA. (Doc. No. 9-1 at 7; *see* Doc. No. 1 at 10 (Prayer).) Hiller essentially concedes this point by arguing (albeit unsuccessfully) that the ADEA provides for an incomplete remedy because these damages are not available. (*See* Doc. No. 12 at 10.) *See Hill v. Spiegel, Inc.*, 708 F.2d 233, 235–36 (6th Cir. 1983) ("damages for pain and suffering are not recoverable in ADEA actions"); *Ricks v. Potter*, No. 1:06-cv-2426, 2008 WL 928484, at *3 (N.D. Ohio Apr. 4, 2008) (granting motion to dismiss claim for punitive damages under the ADEA). Because only the ADEA claim remains, and these damages are not available under the ADEA, the Court dismisses Hiller's request for non-economic and punitive damages.

Nevertheless, Hiller argues that his prayer for punitive damages should be treated as a request for "liquidated damages based on Defendants' willful discrimination." (Doc. No. 12 at 11.) It is true that liquidated damages are available under the ADEA where a plaintiff establishes willfulness, and Hiller's prayer specifically requests "[a]ny and all remedies available under the ADEA[.]" (Doc. No. 1 at 10); *see Merkel v. Scovill, Inc.*, 570 F. Supp. 141, 148 (S.D. Ohio 1983) (stating "[t]he ADEA provides for liquidated damages in an amount equal to the back pay award where the discrimination is willful"). Further, the parties have not addressed whether the complaint adequately sets forth sufficient factual allegations that, if believed, would establish the right to liquidated damages. On summary judgment, the parties may explore whether the evidence uncovered in discovery supports a prayer for liquidated damages. For now, the Court will construe

10

the complaint as requesting (though not necessarily establishing the right to) liquidated damages under the ADEA.

### III. INDIVIDUAL DEFENDANTS' RULE 12(B)(2) MOTION

#### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of a defendant where the Court lacks personal jurisdiction over the defendant. Hiller bears the burden of establishing that this Court has personal jurisdiction over Individual Defendants. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). Individual Defendants have supported their request for Rule 12(b)(2) dismissal with personal declarations. (Doc. No. 9-2 (Declaration of Richard T. Pepping); Doc. No. 9-3 (Declaration of Michael Montemayor); Doc. No. 9-4 (Declaration of Jennifer Lopez).) When faced with a properly supported Rule 12(b)(2) motion, "the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

Where, as here, the Court considers the motion purely on the basis of the written submissions, which is within its discretion, it must view the declarations, pleadings and related documentary evidence in the light most favorable to the plaintiff, and "the plaintiff need only make a *prima facie* showing of jurisdiction." *Bird*, 289 F.3d at 871 (quotation marks and citation omitted). The Court, however, is not precluded from considering undisputed factual representations of the defendant that are consistent with the representations of the plaintiff. *Kerry Steel, Inc. v. Paragon Indus., Inc*., 106 F.3d 147, 153 (6th Cir. 1997).

To assert personal jurisdiction over a defendant, a federal court with subject matter

jurisdiction pursuant to either 28 U.S.C. § 1331 or § 1332 must find that (1) defendant is amenable to service of process under the forum state's long-arm statute, and (2) the exercise of personal jurisdiction will not deny defendant due process. *See Theunissen*, 935 F.2d at 1459 (diversity); *Bird*, 289 F.3d at 871 (federal question); *see also Chapman v. Lawson*, 89 F. Supp. 3d 959, 970 (S.D. Ohio 2015) ("Under Ohio law, personal jurisdiction over non-resident defendants exists only if: (1) Ohio's long-arm statute confers jurisdiction, *and* (2) the requirements of the federal due process clause are met.") (emphasis in original) (citations omitted). Service under Ohio's long-arm statute is governed by Ohio Rev. Code § 2307.382(A). The due process inquiry requires determining "whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen*, 935 F.2d at 1459 (quoting *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). Even if a defendant's contacts with the State of Ohio satisfies Ohio's long-arm statute, personal jurisdiction fails unless exercising jurisdiction over the defendant comports with traditional notions of fair play and substantial justice.

Personal jurisdiction exists in two forms: "general" or "specific." *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992). General jurisdiction exists over a defendant when his "contacts with the forum state are of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third Nat'l Bank in Nashville v. WEDGE Grp. Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989) (collecting case examples). Specific jurisdiction exists when a plaintiff's claims arise out of or relate to a defendant's contacts with the forum state, that is, there

is a nexus between a defendant's contacts in the forum and plaintiff's claim. *Kerry Steel*, 106 F.3d at 149; *Conti*, 977 F.2d at 981. Hiller makes no argument with respect to general jurisdiction, and the record would not support such an argument.

The Sixth Circuit has established a three-part test for determining whether specific jurisdiction exists, which incorporates due process concerns:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). "An inference arises that the third factor is satisfied if the first two requirements are met." *Bird*, 289 F.3d at 875. The Court should also consider "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolutions of controversies." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169–70 (6th Cir. 1988).

The purposeful availment requirement is "the sine qua non for in personam jurisdiction[.]" *Mohasco*, 401 F.2d at 381–82. The requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a substantial connection with the forum State, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (emphasis in original) (quotation marks and citations omitted).

### B. Personal Jurisdiction over Individual Defendants

Individual Defendants argue that none of them "have direct contact with Ohio[,] reside in

13

Ohio, or work in Ohio." (Doc. No. 9-1 at 10, citing declarations.) They have never been to Ohio, and do not have Ohio driver's licenses, bank accounts, or post office boxes. Individual Defendants also do not own real estate in Ohio or maintain phone numbers tied to Ohio. (*Id*., citing declarations.) They posit that, "unlike scenarios where [c]ourts have found jurisdiction, none of the [Individual Defendants] have specifically targeted the Ohio market and have not injected goods into the Ohio stream of commerce." (*Id.*, citing declarations and collecting cases).

In fact, Individual Defendants observe that the only connection they have to Ohio is Hiller, and that the limited times each one interacted with Hiller while he was in Ohio, it was in his or her official capacity as an employee of Aver. (*Id*. at 10–11.) And they underscore the fact that this contact with an Ohio resident was fortuitous at best. Ohio was merely one of several states within Hiller's territory, and, because he was required to travel, Hiller could have chosen to live anywhere.[6] (*See* Doc. No. 9-2 ¶ 9(g–h).) As such, they stress that these Ohio contacts were entirely dictated by Hiller's unilateral decision to reside there and their official duty as Aver employees to interact with him where he chose to reside. (Doc. No. 9-1 at 13; Doc. No. 13 at 10.) *See also Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000) (contacts with Ohio were "purely fortuitous" where defendant did not deliberately choose to exploit the Ohio market and contacts were solely because plaintiff corporation chose to be headquartered in Ohio) (quotation marks and citation omitted).

With regard to personal jurisdiction over corporate officers, Ohio recognizes the "fiduciary shield doctrine," which holds that "'if an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that

---

[6] Hiller was Aver's only employee in Ohio. (Doc. No. 9-2 ¶ 8.)

14

state, of jurisdiction over him personally on the basis of that conduct.'" *Diebold, Inc. v. Firstcard Fin. Servs., Inc.*, 104 F. Supp. 2d 758, 761 (N.D. Ohio 2000) (citing *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2d Cir. 1981)). However, the applicability of the fiduciary shield doctrine has been significantly limited, as "the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants." *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000); *see Commodigy OG Vegas Holdings LLC v. ADM Labs*, 417 F. Supp. 3d 912, 924 (N.D. Ohio 2019) (noting that the corporate fiduciary shield doctrine "is not absolute"). "[W]here an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; i.e., whether she purposefully availed herself of the forum and the reasonably foreseeable consequences of that availment." *Balance Dynamics*, 204 F.3d at 698 (citations omitted).

Hence, the Court must examine whether the Individual Defendants were "actively and personally involved" in the conduct giving rise to Hiller's federal claim of age discrimination. *See, e.g., WCR, Inc. v. W. Can. Heat Exchanger, Ltd.*, No. 3:18-cv-278, 2021 WL 2336575, at *5 (S.D. Ohio June 8, 2021) ("Although [defendant's] actions were taken in a corporate capacity, he was actively and personally involved in the conduct giving rise to the claims. Therefore, the corporate shield doctrine provides him no assistance in avoiding this Court's exercise of personal jurisdiction over him."); *Commodigy OG Vegas Holdings*, 417 F. Supp. 3d at 924 (similar). Further, because Hiller must establish personal jurisdiction over each of the Individual Defendants, the contacts of each person "must be assessed individually." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781

15

n.13, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984) (citing *Rush v. Savchuk*, 444 U.S. 320, 332, 100 S. Ct. 571, 62 L. Ed. 2d 516 (1980)).

*Michael Montemayor*

At all times relevant to the complaint, Montemayor was Hiller's direct supervisor, and, in that capacity, he interacted with Hiller by telephone approximately two to four times a week. (Doc. No. 9-3 ¶¶ 8(c), 10.) Because Hiller chose to live in Ohio but was required to travel to other states (*see Id.* ¶ 8(g)), some but not all of those phone calls would have occurred in Ohio. These limited communications are insufficient to establish purposeful availment. *See Zobel v. Contech Enters.*, 170 F. Supp. 3d 1041, 1047 (S.D. Ohio 2016) ("limited phone contact is not sufficient to constitute purposeful availment"); *see also Int'l Tech. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 395 (6th Cir. 1997) (no purposeful availment for purposes of personal jurisdiction in Michigan when "[foreign defendant company] was not attempting to exploit any market for its products in Michigan, and the company presumably would have been pleased to communicate with [plaintiff Michigan company] wherever the latter wished").

Importantly, there is no evidence Hiller communicated with Montemayor about alleged discrimination (or anything else besides Hiller's actual job duties). (*See* Doc. No. 9-3 ¶ 10.) In light of the fully supported motion to dismiss, and to the extent that the Court may still rely on the allegations in the complaint, the only allegations of age discrimination are directed against Pait. (*See* Doc. No. 1 ¶¶ 15, 29–33.) As to Montemayor, the complaint merely provides that he: (1) "repeatedly inquired" of Hiller's retirement plans; (2) along with Pepping and Lopez, advised Hiller of his termination; and (3) was copied on emails wherein Pait expressed his desire to hire younger employees. (Doc. No. 1 ¶¶ 26, 27, 31.) But mere inquiries regarding retirement plans,

16

alone, cannot support a finding of pretext for age discrimination. *See Rosenthal v. Faygo Beverages, Inc.*, 701 F. App'x 472, 480 (6th Cir. 2017) (citing *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997) (distinguishing questions that amounted to pressure or suggestions to retire from mere inquiries)). Further, while Montemayor was one of the individuals who advised Hiller of his termination, there is no allegation that he was a decision-maker; in fact, the complaint is clear that the decision was motivated by Pait's alleged desire to hirer younger employees. (*See* Doc. No. 1 ¶¶ 15, 29–33.) Finally, the fact that Montemayor was copied on emails written by Pait brings Hiller no closer to demonstrating that Montemayor was "actively and personally involved" in the alleged age discrimination. *See Wright v. Xerox Corp.*, 882 F. Supp. 399, 410 (D. N.J. 1995) (fact that defendant was copied on letter written by individual who took adverse action against plaintiff did not establish that defendant directed his activities toward plaintiff in the forum and was insufficient to establish personal jurisdiction over defendant). Because Montemayor did not purposefully avail himself of the forum and could not reasonably expect to be haled into court here, the Court cannot exercise personal jurisdiction over him.

*Richard Pepping*

Pepping's contacts with the forum state are even more tenuous. During the relevant time-period, Pepping served in the role of Vice President of Sales & Marketing, EDU USA (Education Business Unit). (Doc. No. 9-2 ¶ 6.) Montemayor was Pepping's direct subordinate and reported to him. (*Id.* ¶ 9(c).) Hiller did not report directly to Pepping, and Pepping avers that he "rarely communicated" with Hiller. (*Id.* ¶ 11, *see id.* ¶ 9(d).) At best, he estimates that he only communicated with Hiller once every six to eight weeks. (*Id.*) But for Hiller's decision to live in Ohio, Pepping reports that he would "have had no reason to communicate with anyone in Ohio."

17

(*Id*. ¶ 10.) Specific to Hiller's ADEA claim, Hiller alleges that Pepping was part of the group of Aver employees who informed him of his termination, and Pait once "told members of his senior leadership, including Defendant Pepping, that he wanted to bring in a 'younger breed' of people for Aver's sales teams." (Doc. No. 1 ¶¶ 27, 32.)

These contacts do not establish that Pepping directed his activities toward Ohio in the manner required to establish personal jurisdiction over him. Being present when Pait discussed his alleged general preference for a younger salesforce does not equate to having been personally involved with the alleged discrimination against the only employee residing in Ohio such that Pepping has forfeited the protection of the fiduciary shield doctrine. *Cf. Balance*, 204 F.3d at 698. Because Pepping did not purposefully avail himself of the forum and the reasonably foreseeable consequences of that availment, the Court cannot exercise personal jurisdiction over him.

*Jennifer Lopez*

Lopez's connection to Ohio and Hiller's claim is the least substantial. As a Human Resources Generalist for Aver from June 2018 to December 2019, Lopez had various human resources duties, including on-boarding new employees, conducting screening interview, and managing leaves. (Doc. No. 9-4 ¶ 3.) When she was elevated to the position of Human Resources Manager in January 2020, she maintained many of the same duties but also assisted in generating sales incentive and bonus agreements. (*Id*.) Like Pepping, she rarely communicated with Hiller, and, at most, she communicated with Hiller no more than once a month. (*Id*. ¶ 8.) When she did, her communications with Hiller were limited to "human resources matters (such as benefits)." (*Id*.) She never spoke with Hiller "regarding his substantive job duties, such as his sales leads, sales figures, or overall performance." (*Id*.) The Court finds insufficient connections to the forum and

Hiller's remaining claim to support the exercise personal jurisdiction over this defendant.[7]

In fact, the record—viewed in the light most favorable to Hiller—does not establish that any of the Individual Defendants purposefully availed themselves of this forum, the cause of action cannot be said to have arisen from their actions, and their actions do not have a substantial enough connection to Ohio to make exercising jurisdiction over them reasonable. *See Mohasco Indus.*, 401 F.2d at 381 (setting forth test). Because Hiller has failed to establish sufficient contacts with the State of Ohio to assert personal jurisdiction over any of the Individual Defendants, their requests to be dismissed from this action are granted.

### IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED. Hiller's claim for wrongful discharge in violation of public policy, as well as his request for non-economic and punitive damages, are dismissed under Rule 12(b)(6). Defendants Montemayor, Pepping, and Lopez are dismissed under Rule 12(b)(2) for want of personal jurisdiction. This case will proceed solely against Aver on Hiller's ADEA claim.

**IT IS SO ORDERED**.

Dated: August 23, 2021

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[7] The out-of-district case relied upon by Hiller—*Sirois v. E. W. Partners, Inc.*, 285 F. Supp. 3d 1152 (D. Haw. 2018)—is easily distinguished. There, the district court ruled that it had personal jurisdiction over the employer's human resources director because it was alleged that the H.R. director personally received plaintiff's complaints regarding the hostile work environment and retaliation she alleged she was exposed to and "failed to conduct an investigation or take appropriate remedial actions." *Id.* at 1168 (citing record). Because these actions contributed to the ultimate dismissal of a Hawaii-based employee, the court found it could exercise personal jurisdiction over the individual. *Id.* In contrast, Lopez (and for that matter Montemayor and Pepping) did not take any action against an Ohio-based employee other than advise him of his termination, a decision the complaint attributes to the alleged age-based animus of Aver's president.